PEOPLE v SUTHERLAND

Docket No. 79253. Submitted October 2, 1985, at Grand Rapids.—
    Decided December 20, 1985.

   Defendant, Helena Sutherland, was convicted following a jury
   trial in Calhoun Circuit Court of second-degree murder and
   possession of a firearm in the commission of a felony. The trial
   court, Stanley Everett, J., sentenced defendant to from 5 to 15
   years imprisonment for the murder conviction and 2 years
   imprisonment for the felony-firearm conviction. Defendant ap-
   peals. *Held:*

   1. The trial court's allowance of insurance agent Harry
   Ackerman's rebuttal testimony for impeachment purposes was
   reversible error. Ackerman's testimony was not proper rebut-
   tal.

   2. The rebuttal testimony of Fritzina Huggins and Artice
   Smith was improperly admitted. Eva King's rebuttal testimony
   was properly admitted.

   3. The Court of Appeals disapproved of the prosecutor's
   comment in closing argument wherein the prosecutor referred
   to the Ten Commandments. The Court of Appeals also disap-
   proved of the prosecutor's injection of a self-defense issue in
   closing argument.

   4. Defendant's claimed error with regard to the selection of
   the jury is waived since defense counsel expressed satisfaction
   with the jury on the record. In any event, the Court of Appeals
   does not believe that the trial court abused its discretion in
   dismissing the four jurors for cause as defendant claims.

   Reversed and remanded. Jurisdiction is not retained.

REFERENCES
Am Jur 2d, Homicide § 12.
Am Jur 2d, Jury §§ 136-154, 178.
Am Jur 2d, Witnesses §§ 518 *et seq.*
Use or admissibilty of prior inconsistent statements of witness as
    substantive evidence of facts to which they relate in criminal
    case-modern state cases. 30 ALR4th 414.
See also the annotations in the ALR3d/4th Quick Index under
    Homicide; Jury and Jury Trial.

1. Evidence — Impeachment — Extrinsic Evidence — Rules of Evidence.

Extrinsic evidence may be used to impeach a witness on a material matter; extrinsic evidence may not be used to impeach a witness on a collateral matter (MRE 608[b]).

2. Homicide — Evidence — Motive.

Evidence of motive is always relevant in a murder prosecution.

3. Criminal Law — Cross-Examination — Rebuttal Evidence.

A prosecutor may not elicit a denial during the cross-examination of a defense witness and then use that denial to inject a new issue into the case; cross-examination cannot be used to revive the right to introduce evidence that could have been, but was not, introduced in the prosecutor's case-in-chief.

4. Criminal Law — Jury — Waiver.

A defendant waives a claim of error with regard to the selection of the jury where the defendant's counsel expressed satisfaction with the jury on the record.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Wendelyn M. Harris,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rafael C. Villarruel),* for defendant on appeal.

Before: DANHOF, C.J., and MacKENZIE and J. L. BANKS,* JJ.

PER CURIAM. Defendant was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). She was sentenced to serve from 5 to 15 years imprisonment for the second-degree murder conviction and 2 years imprisonment for the felony-firearm conviction. Defendant appeals as of right. We reverse.

* Circuit judge, sitting on the Court of Appeals by assignment.

This case stems from the shooting death of defendant's husband, Cortez Sutherland. On the evening of April 8, 1983, defendant and her husband engaged in an argument about drugs. The argument apparently precipitated defendant's decision to leave her husband. Defendant gathered some luggage and called a cab to take her to the bus station. Mr. Sutherland entered the cab with defendant and directed it to the address of a friend, Lee Glover. When they arrived at Glover's residence, Mr. Sutherland pulled defendant out of the cab. The two entered Glover's apartment and then went outside, where they continued arguing. A single gunshot was fired. Defendant screamed "Oh, my God, I did it" and ran into the building. When the police arrived, defendant turned over a small derringer. She was yelling "Why did he do it, why did he do it, I didn't mean to. I didn't mean to".

Defendant, who chose to testify at trial, interposed an accident defense. In cross-examining defendant, the prosecutor asked her if she had taken out a life insurance policy on her husband the day before the shooting. Defendant stated that she had gone to insurance agent Harry Ackerman three days before her husband's death, but denied that she told Ackerman that her husband would be unable to come in and sign the forms, that she signed Mr. Sutherland's name on a policy, or that she was named beneficiary of the policy. Over defense objection, the prosecutor called Ackerman as a rebuttal witness. Ackerman testified that defendant came to his office the day before the shooting to discuss a $50,000 life insurance policy on her husband. According to Ackerman, he permitted defendant to sign her husband's name on a policy in which defendant was named beneficiary.

The trial court allowed Ackerman's rebuttal

testimony for impeachment purposes. Defendant contends that this was error. We agree. Extrinsic evidence may be used to impeach a witness on a material, as opposed to collateral, matter. See, *e.g.,* MRE 608(b); *People v Losey,* 413 Mich 346; 320 NW2d 49 (1982); *People v Teague,* 411 Mich 562; 309 NW2d 530 (1981). Evidence of motive, such as the rebuttal testimony in this case, is always relevant in a murder prosecution. See *People v Mihalko,* 306 Mich 356; 10 NW2d 914 (1943); see also *People v Flynn,* 93 Mich App 713; 287 NW2d 329 (1979), *lv den* 409 Mich 852 (1980). However, the prosecutor may not elicit a denial during the cross-examination of a defense witness and then use that denial to inject a new issue into the case. *People v Bennett,* 393 Mich 445, 449; 224 NW2d 840 (1975). Similarly, cross-examination cannot be used to revive the right to introduce evidence that could have been, but was not, introduced in the prosecutor's case-in-chief. *Losey, supra.*

The rule regarding rebuttal evidence by a prosecutor has developed from *People v Quick,* 58 Mich 321, 322-323; 25 NW 302 (1885), which stated:

"We have held on several occasions that the defendant has a right to know in advance of the trial what witnesses are to be produced against him, so far as then known, and to have any new witnesses endorsed on the information as soon as discovered. The object of this is not merely to advise a respondent what witnesses will be produced on the main charge. It is to guard him against the production of persons who are unknown, and whose character he should have an opportunity to canvass. It is as important to impeach a rebutting witness as any other. In the present case, however, the witnesses who were received as rebutting witnesses were not such. They were called to prove what belonged to the people's case in chief. Cases may sometimes arise where testimony which could not be had in the opening may be let in upon good cause shown thereafter. *But it*

*is not proper to divide up the testimony on which the
people propose to rest their case, and nothing which
tends to prove the commission of the crime itself or its
immediate surroundings can be classed as rebutting
evidence under ordinary circumstances, if at all."* (Emphasis added.)

In the instant case, the issue of life insurance was
not raised in the case-in-chief, nor was it raised by
the defense. Instead, the issue was raised for the
first time during the prosecutor's cross-examination of defendant. Accordingly, the rule of *Quick*
was violated here; Ackerman's testimony was not
proper rebuttal. See *Losey, supra, Bennett, supra.*
See also *People v Hernandez,* 423 Mich 340; 377
NW2d 729 (1985). Moreover, even if we were to
assume, as the prosecutor did below, that the
rebuttal testimony did not go to a material element of the prosecution, Ackerman's rebuttal testimony would still be inadmissible. Extrinsic evidence may not be used to impeach a witness on a
collateral matter. *Teague, supra,* p 566; *Losey,
supra,* p 353; MRE 608(b).

Because we conclude that the introduction of
Ackerman's rebuttal testimony constituted reversible error, we shall briefly address defendant's
remaining arguments to prevent further error on
retrial.

First, we agree with defendant that the rebuttal
testimony of Fritzina Huggins and Artice Smith
was improperly admitted. As previously noted,
extrinsic evidence may not be used to impeach a
witness on a collateral matter. Huggins's rebuttal
testimony served only to impeach defendant's denial on cross-examination that the reason defendant carried a gun was because she had experienced trouble with other women "messing around"
with her previous husbands. Defendant's problems
with other women and previous husbands was

clearly collateral to the issues at trial and thus not a proper subject for rebuttal testimony. Likewise, Artice Smith's rebuttal testimony appears to have been offered solely for the purposes of testing defendant's credibility on a collateral matter. We conclude, however, that Eva King's rebuttal testimony was properly admitted. Violence in defendant's marriage was not an issue in the case until raised by defendant during her direct testimony. Once placed at issue by the defense, the prosecutor could enter evidence concerning the severity of any physical abuse to refute defendant's testimony that Mr. Sutherland often beat her.

Second, although we believe that this case is distinguishable from *People v Rohn,* 98 Mich App 593; 296 NW2d 315 (1980), *lv den* 410 Mich 876 (1980), and that a cautionary instruction would have cured any error which may have occurred when the prosecutor referred to the Ten Commandments in closing argument, see *People v Lytal,* 119 Mich App 562, 570-571; 326 NW2d 559 (1982), *lv den* 417 Mich 1066 (1983), we nonetheless register our disapproval of the comment. Similarly, we disapprove of the prosecutor's injection of a self-defense issue in closing argument.

Finally, defendant's claimed error with regard to selection of the jury is waived. Defense counsel expressed satisfaction with the jury on the record. See *People v Duerson,* 35 Mich App 223; 192 NW2d 309 (1971). In any event, we do not believe that the trial court abused its discretion in dismissing the four jurors for cause as defendant claims.

Reversed and remanded. We do not retain jurisdiction.